UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERNON CHAPMAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 16-CV-4918 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

The petitioner, Vernon Chapman, is currently in the custody of the Federal Bureau of Prisons serving a 200-month prison sentence. Chapman moves this Court to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. For the following reasons, that Motion is denied without an evidentiary hearing. In addition, this Court declines to certify any issues for appeal.

**Background**

The following are the general facts of this case as set forth in the trial record and the Seventh Circuit Court of Appeals decision in *United States v. Chapman*, 804 F.3d 895 (7th Cir. 2015). In January of 2011, Vernon Chapman was charged with one count of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). Later that year, he was charged with an additional four counts of distributing a controlled substance under 21 U.S.C. § 841(a)(1), as well as two counts of violating 21 U.S.C. § 843(b). All of these charges were consolidated into one case, which proceeded to a jury trial. At trial, Chapman was found guilty on all counts.

The charges against Chapman stemmed from his alleged involvement in narcotics transactions with an undercover DEA informant throughout 2010. On five separate occasions, Chapman sold heroin and crack cocaine to the informant. During all of these drug transactions, the

1

informant was wearing a Hawk recording device, which captured audio and video recordings of each encounter. The recordings from the Hawk devices were then downloaded onto a DVD through a computer software program.

Prior to trial, Chapman and his attorneys made several motions to have an expert examine the recording from a drug transaction with the informant in November 2010. Chapman alleged that the DVD recording of that transaction omitted certain acts and statements between him and the informant. According to Chapman, these statements and acts would have been picked up by the Hawk recorder and were material to the issue of his guilt. In July of 2012, Chapman's attorney, Michael Bolan, filed a motion seeking the appointment of an expert to examine the original audio and video recordings depicted in the November DVD. The court granted the motion and appointed audio-visual expert Adam Dew. Dew had over ten years of experience working with digital videos. After examining the November recording, Dew opined that the DVD did not show any signs of tampering. He noted, however, that he did not have access to the original camera recordings and that there was a glitch and audio skip in the DVD.

In May of 2013, Chapman's new attorney, Steven Hunter, filed a motion seeking a forensic expert to again examine the November DVD recording. The motion reasserted that the DVD did not contain the entire contents of the Hawk recording device. The court granted the motion, appointing Barry Dickey. Dickey is an expert in forensic evaluation or authentication of audio and visual media. After examining the DVD containing the November recording, Dickey concluded that the recording did not contain any anomaly that would call into question the authenticity or continuity of the recording.

In December of 2013, Chapman filed a motion on his own behalf, seeking the appointment of a computer expert rather than an audiovisual expert. In that motion, Chapman alleged that approximately ten minutes of the conversation from the November exchange was missing from the

DVD. The district court conducted two different hearings before concluding that a third expert was not necessary because Chapman did not produce any evidence suggesting that the DVD had been tampered with. In April of 2014, Chapman's third attorney, Bart Beals, filed a similar motion asking the court for appointment of a computer expert. After again holding a hearing, the district court denied the motion, noting that Chapman had failed to present any evidence that the data from the Hawk device would differ from the data on the DVD that his experts had reviewed.

During the trial in May of 2014, all of the recordings from the drug transactions were admitted into evidence. An FBI special agent who had activated the Hawk recording device before the November transaction and listened in real time while the transaction took place also testified at trial. The agent testified that the Hawk device had been working that day, and that he reviewed the DVD containing the recordings from the Hawk device. He further testified that the DVD was a true and accurate copy of what he heard during the transaction and of what was contained on the Hawk device. Chapman testified in his own defense and did not deny his involvement in the drug transactions. Instead, he raised an entrapment defense and filed a motion for acquittal based on that defense, which the district court denied. Chapman was found guilty and was found to be a career offender under the Sentencing Guidelines. He was sentenced to 200 months in prison.

On appeal, Chapman challenged the denial of a computer expert, the admission of the November DVD, the denial of acquittal based on an entrapment defense, and his sentence. He argued that the district court erred by not authorizing funds under the CJA to allow him to hire a computer expert to test the Government's evidence. He also argued that he should have been allowed to subpoena Dew so that Dew could testify that he did not have access to the original camera recordings. The Court of Appeals rejected both arguments and affirmed the denial of the expert and the subpoena. Chapman also argued that admitting the November DVD violated the Best Evidence Rule because it was not the original recording, so it was therefore inadmissible. The

Seventh Circuit Court of Appeals again rejected this argument, holding that the DVD was properly admitted as a duplicate and noting that Chapman had failed to raise a genuine issue about its authenticity. Chapman further challenged the district court's denial of his motion for acquittal based on an entrapment defense. However, the Seventh Circuit found that there was sufficient evidence presented at trial to establish that the Government did not induce Chapman to engage in the illegal drugs transactions.

Chapman filed a petition for a writ of certiorari, which the Supreme Court denied. Chapman has now filed the present motion, which alleges that he was repeatedly denied effective assistance of counsel throughout his trial. In particular, he alleges that all of his trial attorneys were ineffective for failing to obtain a computer expert, that he was improperly instructed to testify in his own defense, and that his attorney failed to object to his career offender status during sentencing.

**Legal Standard**

Under 28 U.S.C. § 2255, a person may seek to vacate, set aside or correct a sentence that has been "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Relief under section 2255 is "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Therefore, relief is only available in cases where a jurisdictional or constitutional error has been made and where there has been a "complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013). A section 2255 motion is not a substitute for a direct criminal appeal. *Clay v. United States*, 311 F. Supp. 3d 911 (N.D. Ill. 2018) (Dow, J.).

**Discussion**

In his petition and supplemental motion for section 2255 relief, Chapman raises five points of error upon which he contends relief should be granted. As an initial matter, Chapman withdraws

4

his claims that his counsel failed to raise an agency defense at trial and failed to request a jury instruction based on an agency-type defense. He has stated that the argument was improperly included in his petition, so the Court will not consider it.

The Court first considers whether an evidentiary hearing is necessary to resolve Chapman's claims. A petitioner is entitled to an evidentiary hearing unless the 'files and records of the case conclusively show that the prisoner is entitled to no relief,' or the petitioner's allegations are only vague and conclusory. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016) (quoting *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010)). The Seventh Circuit requires that petitioners file a detailed affidavit along with their section 2255 motion, outlining the specific facts supporting their allegations. *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002). In addition to the allegations set forward in that affidavit, courts are also permitted to consider all of the 'files and records of the case,' including the government's response, when determining whether or not a petitioner is entitled to an evidentiary hearing. See *York v. United States*, 55 F. Supp. 3d 1028, 1033 (N.D. Ill. 2014) (Castillo, J.) (citing *Koons v. United States*, 639 F.3d 348, 355 (7th Cir. 2011)). No hearing is required if the allegations in the motion are unreasonably vague or conclusory, or if the allegations can be resolved based on the record alone. *Oliver v. United States*, 961 F.2d 1339, 1343, n.5 (7th Cir. 1992). After reviewing the record and submissions, Chapman's claims can be resolved based on the record alone. Therefore, this Court does not require an evidentiary hearing.

I. Failure to Seek Computer Expert

Chapman first claims that his trial lawyers were ineffective for failing to retain a computer expert. To succeed on a claim of ineffective assistance of counsel, a petitioner must show that his trial attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Reasonable probability

is probability that is "sufficient to undermine confidence in the outcome." *Id.* When evaluating attorneys' performances, courts must give ample deference to attorneys "to eliminate as much as possible the distorting effects of hindsight". *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). It is accordingly presumed that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Chapman first argues that his trial attorneys were ineffective by failing to get a computer expert to examine the November DVD. Chapman argues that Ralph Schindler, his first attorney, was deficient because he did not file any motions demanding that the FBI turn over the original recording device after Chapman informed him that the DVD did not contain critical parts of the drug transaction. According to Chapman, Schindler's inaction made Chapman unable to raise any defense at all, including an entrapment defense. Chapman's next lawyer, Charles Aron, failed to have a computer expert examine the Hawk device and instead obtained an audio-video expert to examine the DVD, which Chapman alleges was objectively unreasonable. Chapman alleges that his next lawyer, Michael Bolan, was unreasonable for planning to question the completeness of the DVD during cross-examination rather than through a computer expert, and for failing to retrieve the evidence allegedly missing from the DVD. Bolan was succeeded by Steven Hunter, who Chapman alleges unreasonably ignored his request to obtain a computer expert and instead obtained an audio expert, which was not an adequate substitute and was against Chapman's interests.

After firing Hunter, Chapman filed a pro se motion for a computer expert, which was denied. When Bart Beals was appointed as lead counsel and moved the court for funds to hire a computer expert, the court again denied the motion. Chapman alleges that a computer expert told Beals that anything could be manipulated on a computer and that Beals should have obtained an affidavit containing the expert's statement. Chapman also alleges that Beals was deficient for failing to try to obtain the funds after the court denied the motion without prejudice.

6

Chapman alleges that the actions and inactions of his five trial attorneys biased the court by making it seem like the evidence Chapman was seeking to uncover did not exist. He claims that this bias influenced the court's decision to deny funding for a computer expert. In addition, his attorneys' failures to get a computer expert prevented him from subjecting the prosecution's evidence to meaningful adversarial testing in violation of the United States Constitution. As a result, he was unable to obtain Brady evidence that would have bolstered his entrapment defense by showing his lack of predisposition and by showing that the government created the crime.

Neither Chapman's allegations nor the record support a finding that his attorneys acted objectively unreasonably during his trial. The record from the proceedings below demonstrates that Schindler filed several motions, including motions to raise an entrapment defense at trial and to suppress incriminating wiretap evidence. Although Schindler did not file a motion requesting that an expert examine the original Hawk recording devices, he did file a motion to exclude all five of the recordings from admission into evidence. This motion would have prevented the judge and the jury from hearing any of the recordings at all, including the DVD that Chapman claims omitted exculpatory evidence. Schindler also filed a motion with the court requiring the prosecution to turn over any evidence that may be favorable to Chapman. This evidence would include any evidence that the DVD did not contain a complete, true and accurate depiction of everything recorded on the Hawk device during the November 2010 narcotics transaction.

Although it is unclear why Schindler did not file a motion to hire a computer expert, courts give significant deference to attorneys given the wide range of acceptable trial strategies available to them. *Yu Tian Li v. United States*, 648 F.3d 524, 527 (7th Cir. 2011). It is the defendant's burden to demonstrate that an attorney's performance was not strategic and was objectively unreasonable. *Id.* at 528. The record demonstrates that Schindler was actively pursuing various methods of suppressing and limiting the amount of incriminating evidence allowed to be presented at trial.

7

Schindler was also preparing to present an entrapment defense despite his decision not to seek a computer expert, refuting Chapman's assertion that he was unable to present any defense at all. Chapman has failed to demonstrate that these strategies were the result of ignorance or were outside the wide range of reasonable professional assistance to which he is entitled. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 106-07 (2011) (holding that attorney was not objectively unreasonable for failing to consult blood evidence experts as part of trial strategy because counsel was entitled to "balance limited resources in accord with effective trial tactics" when developing a strategy); *Benabe v. United States*, 68 F. Supp. 3d 858, 865 (N.D. Ill. 2014) (Castillo, J.) (holding that trial attorney was not objectively unreasonable for failing to request a *Franks* hearing and instead moving to suppress all evidence seized from a search of defendant's apartment).

Chapman's complaints against Aron do not establish objectively unreasonable conduct. Aron only served as Chapman's attorney for approximately three and a half months. During that time, Aron sought to adopt several of Schindler's previously-filed motions, including his motion to raise an entrapment defense. Although it is again unclear why Aron did not file a motion to hire a computer expert, the record reflects that he was pursuing reasonable alternative strategies.

Neither was Bolan's representation objectively unreasonable. Contrary to Chapman's assertions, Bolan did in fact file a motion with the court seeking an expert to examine the "original audio and video recordings, not copies of those recordings." The motion also states that Chapman reasonably believed that the DVD contained important, probative omissions from the original recordings. Therefore, the record demonstrates that Bolan complied with Chapman's request to obtain an expert and attempted to determine whether any exculpatory evidence was missing from the DVD. Chapman has not presented any other argument or evidence that Bolan acted objectively unreasonable, and the record also does not support such an argument.

Far from acting against Chapman's interests, the record reflects that Hunter did seek an audio and visual expert because "[Chapman] assert[ed] that portions [of] conversations between the C/I and the defendant have been removed." In fact, Hunter proposed multiple experts before deciding on Dickey. In his motion to obtain the funds to hire Dickey, Hunter noted that of the experts he researched, several stated "that it is possible that an actual physical examination of the recording equipment and the original recording may be required to definitively determine if [there has been tampering of] the recording in question." The district court issued a Minute Order shortly after Hunter filed that motion, which reflects that Hunter verified with the expert that the mirror of the hard drive that Chapman sought to investigate was nonexistent. Accordingly, Hunter could not "in good faith have filed a motion to compel of the nature sought to be filed by defendant." The record thus reflects that Hunter was precluded from complying with Chapman's specific request because the original recording was unavailable, not because he failed to attempt to seek it. *See United States v. Chapman*, 804 F.3d 895, 901 (7th Cir. 2015) (discussing how once the information from the Hawk device has been downloaded on to a computer, nothing remains stored on the computer after the recording has been transferred to a DVD).

Finally, Beals was not objectively unreasonable for failing to ask the court to reconsider its ruling on funding another expert witness and for failing to obtain an affidavit from a computer expert stating that anything could be manipulated on a computer. As discussed above, attorneys are given substantial deference to account for the multitude of acceptable strategies that they may use to represent a criminal defendant. The Supreme Court has noted that attorneys are also entitled to "balance limited resources in accord with effective trial tactics and strategies" when choosing a certain course of action. *Harrison v. Richter*, 562 U.S. 86, 107 (2011). At this stage in the litigation, two experts had already reviewed the DVD in question, and both Chapman and his attorneys had filed several motions with the court related to the expert witnesses and the integrity of the recordings. If

9

Chapman and Beals wanted to challenge the completeness the recordings on the DVDs, there were other methods of doing so, such as through cross-examination or through Chapman's own testimony about his interactions with the informant. The Court does not find that Beals was objectively unreasonable for declining to pursue a route that had previously been unsuccessful, or for choosing to not ask the court if it would allocate financial resources to an expert affidavit stating only that anything could be manipulated on a computer.

Even if his attorneys acted objectively unreasonable at trial, Chapman has not demonstrated that he was prejudiced as a result. To demonstrate prejudice, a petitioner must demonstrate that the outcome of the trial would have been different but for the mistakes of his or her attorney. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Seventh Circuit Court of Appeals has already held that sufficient evidence was presented at trial to rebut an entrapment defense. *See United States v. Chapman*, 804 F.3d 895, 900, 902-03 (7th Cir. 2015). Issues raised on direct appeal may not be reconsidered in section 2255 motions absent changed circumstances. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (citing *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995)). Chapman argues that there are changed circumstances in this case because a Circuit Court judge allegedly told his counsel, "you should have got [Chapman] a computer expert." However, this is precisely the same fact that Chapman was asserting before both the district court and the Court of Appeals and therefore does not constitute a changed circumstance.

Chapman's argument that he made exculpatory statements, moreover, is unsupported by any evidence establishing the existence of such statements or that an expert would have been able to retrieve them. The ability to recover the supposedly missing recordings is especially suspect in light of the fact that the recordings from the original Hawk device were deleted. Chapman has therefore failed to establish that his defense was prejudiced by counsel's failure to obtain a computer expert.

II. Testifying at Trial

Chapman has also alleged that his trial counsel was constitutionally ineffective for making the decision that Chapman would testify at trial. The Court notes that Chapman has failed to fully develop this argument, devoting merely one line of his section 2255 supporting memorandum to the threadbare statement that he did not make the choice to testify at trial, but his counsel did.

The record reflects that even if his counsel required Chapman to testify, and even if counsel was unreasonable for doing so, Chapman was not prejudiced by his testimony. Although Chapman testified that he participated in the drug deals, substantial evidence was presented at trial to support his conviction, including multiple tape recordings of the transactions and testimony from FBI agents involved in Chapman's arrest. *United States v. Chapman*, 804 F.3d 895, 902 (7th Cir. 2015). In addition, Chapman's testimony was necessary to raise an entrapment defense and mitigate the wealth of other incriminating evidence presented, including his own post-arrest statements admitting that he sold the drugs in question. *Id.* at 899. The Seventh Circuit Court of Appeals held that not only was Chapman not entrapped, but that the recordings of the transactions presented at trial demonstrated this. *Id.* at 903. Therefore, the record below supports that there was sufficient evidence notwithstanding Chapman's testimony to support his conviction, and he is unable to demonstrate that he was prejudiced by testifying in his own defense.

III. Failure to Object to Career Offender Status

Finally, Chapman alleges that his counsel at sentencing should have objected to his designation as a career offender under the Sentencing Guidelines, which contributed to his Guidelines range of 360 months to life in prison. Specifically, Chapman argues that the Illinois statute for possession with intent to distribute, one of his underlying predicate offenses, penalizes a greater range of conduct than the federal statute and he therefore should not have been designated a career offender.

11

The record reflects that Beals, Chapman's sentencing counsel, did object to Chapman's status as a career offender. Beals raised this argument in his sentencing memorandum, where he argued that Chapman should be sentenced to only 120 months, the mandatory minimum required by statute. At the sentencing hearing, Beals argued that Chapman's career offender status was inappropriate because Chapman's predicate offenses were nonviolent drug offenses, so Chapman was not a danger to the community. Although Beals did not object to Chapman's career offender status by claiming that one of his offenses did not constitute a predicate offense, this Court does not find that Beals was unreasonable for declining to raise that specific argument and by attempting to mitigate Chapman's criminal history through alternate methods.

Chapman also cannot demonstrate that he was prejudiced by Beals' decision. The Seventh Circuit Court of Appeals has held that the Illinois statute regarding possession of narcotics with intent to distribute, 720 ILCS 570/401, falls within the purview of the career offender enhancement of the Sentencing Guidelines. *United States v. Redden*, 875 F.3d 374, 375 (7th Cir. 2017). Assuming that this is the Illinois statute to which Chapman is referring in his petition, Chapman cannot show that he was prejudiced because his underlying drug offense has been held to qualify as a career offender predicate offense in this Circuit.

In addition, the Sentencing Guidelines became advisory rather than mandatory in 2005, after the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). Since then, the Seventh Circuit has held that because the Guidelines are advisory, even an erroneous calculation is generally not cognizable under section 2255. *Hawkins v. United States*, 706 F.3d 820, 822 (7th Cir. 2013) ("Not only do the guidelines no longer bind the sentencing judge; the judge may not even *presume* that a sentence within the applicable guidelines range would be proper."); *see also United States v. Coleman*, 763 F.3d 2014 (7th Cir. 2014).

12

The record reflects that Chapman's sentencing judge appreciated the advisory nature of the Guidelines notwithstanding Chapman's classification as a career offender. The record also reflects that the district court judge did not find that a term of 175 months, the maximum term of Chapman's calculated Guidelines range without the career offender enhancement, was sufficient given Chapman's lengthy criminal history. The judge was within his discretion to depart from the Guidelines and exercised that discretion to do so regardless of whether Chapman qualified as a career offender. Even if Beals had raised Chapman's proposed argument that one of Chapman's predicate offenses did not qualify and the court accepted that argument, the law would permit the sentencing judge to impose the same sentence, and the record reflects that he would have been compelled to do so. Therefore, Chapman has failed to demonstrate that he was prejudiced by his counsel's failure to object to his career offender status.

IV. Certificate of Appealability

A petitioner does not have an absolute right to appeal a district court's denial of his section 2255 motion and must obtain a certificate of appealability in order to do so. *See* 28 U.S.C. § 2253(c)(2). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing that he has been deprived of a constitutional right. *Id.*; *see also Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). To make a substantial showing, the petitioner is not required to show that he is likely to prevail, but only that reasonable jurists could debate whether the petition should have been resolved differently. *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, Chapman has not demonstrated that reasonable jurists would debate that his petition should be resolved differently. Therefore, this Court declines to issue a certificate of appealability.

**CONCLUSION**

For the reasons set forth above, Chapman's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 is denied without an evidentiary hearing, and this Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

Date: 12/10/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge